IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02065-WDM-KMT

DELL MELLETTE,
MARVIN LORD,
LEONARD RICHEY,

    Plaintiffs,

v.

MICHAEL BRANCH,
FORD JOHNSON
CINDY JOHNSON,
MARK JOHNSON,
JAMES LAKE a.k.a LES LAKE,
JOHN GRAVES,
JLC TECHNOLOGIES, LLC a.k.a. JLC OS3, L.L.C.,

    Defendants.

# ORDER and
# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

    This matter is before the court on "Plaintiffs' Motion for Leave to File a Second Amended Complaint" [Doc. No. 87, filed May 16, 2008]. Defendants Ford Johnson, Cindy Johnson, Mark Johnson, John Graves, and JLC Technologies, LLC filed "Defendants' Response to Plaintiffs' Motion for Leave to File a Second Amended Complaint" on May 30, 2009 ("Rsp." [Doc. No. 89]) and "Plaintiff's Reply to Defendants' Response Regarding Plaintiffs' Motion for

Leave to File a Second Amended Complaint" was filed on June 15, 2008 ("Reply" [Doc. No. 90]).

Defendants object to the filing of the Second Amended Complaint (hereinafter "SAC") on the basis that: the Private Securities Litigation Reform Act of 1995 ("PSLRA) does not allow amendment of pleadings; the pleading does not conform with the statutory heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b); the amendment is futile because the limited partner plaintiffs lack standing pursuant to securities regulations; the plaintiffs lack standing in a breach of contract action; and, the defendants are not the sellers of the securities at issue in the case.

The SAC sets forth claims for Violation of the Securities Act of 1933 Section 12a(2); Violation of the Anti-Fraud Provisions of the Securities Exchange Act of 1934, 10b(5); Civil Conspiracy; Common Law Fraud; Constructive Fraud; Negligent Representation; Breach of Lease Agreement Contracts (against JLC and Ford Johnson); Breach of Purchase Agreement Contracts (against JLC and Ford Johnson); Breach of Rescission Agreement Contracts (against JLC and Ford Johnson); Breach of Fiduciary Duties (against Michael Branch); and Intentional Infliction of Emotional Distress/Extreme and Outrageous Conduct.

### *I.    Procedural History*

The original Complaint in this action was filed on October 3, 2007 when the plaintiffs were proceeding *pro se*. [Doc. No. 1]. Several Defendants filed a Motion to Dismiss and as a result of Plaintiffs missing the response date, the Court issued a Show Cause Order. [Doc. No. 21, filed January 4, 2008]. Five days later, attorney Thomas V. Hoeflinger entered his

appearance, filed an Amended Complaint, and requested additional time to respond to the Show Cause Order. [Doc. Nos. 23, 24 and 26]. On January 23, 2008, the plaintiffs filed a Motion for Leave to File an Amended Complaint, claiming the January 4, 2008 Amended Complaint was filed "as of right" pursuant to Fed. R. Civ. P. 15, because the defendants had not yet answered. [Plaintiffs' Motion for Leave to File an Amended Complaint, Doc. No. 45, ¶¶ 6 and 7]. The motion was granted and on February 1, 2008 the Amended Complaint and Jury Demand was filed. [Doc. No. 49].

Meanwhile, Defendants' Motions to Dismiss [Doc. No. 14, filed December 3, 2008; Doc. No. 19, filed December 17, 2007] remained pending and stayed further discovery pursuant to the mandatory stay provisions of Title 15 U.S.C. §78u-4(b)(3)(B). As a result of the mandatory stay, the court did not enter a Scheduling Order. The defendants filed Amended Motions to Dismiss [Doc. No. 69, filed February 18, 2008; Doc. No. 72, filed March 5, 2008; Doc. No. 76, filed March 11, 2008] which are pending.

## II. Analysis

### A. Effect of the Private Securities Litigation Reform Act of 1995 ("PSLRA") on Fed. R. Civ. P. 15(a)

Pursuant to Fed. R. Civ. P. 15(a), "The court should freely give leave (to amend the pleadings) when justice so requires." *See also York v. Cherry Creek Sch. Dist. No. 5,* 232 F.R.D. 648, 649 (D. Colo. 2005); *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.,* 353 F.3d 832, 842 (10th Cir. 2003). The Supreme Court has excepted only limited circumstances under which denial of a timely filed motion to amend would be appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Triplett v. LeFlore County, Okl.*, 712 F.2d 444, 446 (10th Cir. 1983). Further, the Supreme Court directs

> [t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson,* 355 U.S. 41, 48 (1957) (abrogated on other grounds by *Bell Atlantic Corp. V. Twombly*, 127 S. Ct. 1955 (2007), recognizing new "plausibility" standard under which to judge Rule 12(b)(6) motions).

Defendants argue that this court should follow the guidance of two district court decisions, *In re Champion Enters., Inc. Sec. Litig.*, 145 F. Supp. 2d 871, 872 (E.D. Mich. 2001) and *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 237 (D. N.J. 2002), neither from the Tenth Circuit, for the proposition that if a PSLRA complaint is not pleaded with sufficient heightened particularity from the very beginning of the case, Fed. R. Civ. P. 15(a) cannot be used to allow the complaint to be rehabilitated. They argue that the PSLRA mandates dismissal with prejudice for an insufficient pleading. However, the circuit decisions considering the issue have opted for a less harsh result. In *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), the Ninth Circuit found that the PSLRA was not intended to abolish the

4

liberal amendment provisions of Rule 15. Likewise, in *Belizan v. Hershon,* 434 F.3d 579, 583-84 (D.C. Cir. 2006), the D.C. Circuit found that the PSLRA does not mandate dismissal with prejudice for failure to meet the pleading requirements, and in the absence of such a directive, there is no reason to change the ordinary liberal application of Fed. R. Civ. P. 15(a). Finally, in *ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 56 -57 (1st Cir. 2008), the First Circuit stated that "interpreting the PSLRA as constricting the operation of Rule 15(a) would be contrary to the purposes of the Act." *Id*. That court found that a blanket rule mandating that PSLRA eviscerates Rule 15(a) would compromise plaintiffs' ability to have meritorious claims presented in court. *Id*.

In this case, the plaintiffs originally filed their Complaint *pro se.* A liberal approach to leave to amend applies with particular force to *pro se* litigants. "[A] *pro se* plaintiff who fails to allege sufficient facts is to be given a reasonable opportunity to amend his complaint if justice so requires." *Dees v. Vendel*, 1993 WL 191815, 1 (10th Cir. 1993); *Roman-Nose v. New Mexico Dept. of Human Services*, 967 F.2d 435, 438 (10th Cir. 1992).

Plaintiffs counsel, Mr. Hoeflinger, entered his appearance and was immediately facing a show cause order for failures of his clients preceding his entry. He filed an Amended Complaint in a hurry, based on the information he had at the time. (Doc. No. 24; Reply ¶ 10). Between February and May of 2008, he has "engaged in a comprehensive search for evidence", *id*, and has set forth the plaintiffs' claims with more particularity and has abandoned claims deemed improvidently brought. "The number and nature of prior amendments to a complaint is relevant as to any motion for leave to amend." *ACA Financial Guaranty Corp.*, 512 F.3d at 56. In this

5

case, fairness dictates that the plaintiffs be allowed to present their case through informed counsel who has been given an opportunity to research the facts before honing his clients' final allegations.

### B. Futility of Allowing the SAC

"Although Fed.R.Civ.P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Services,* 175 F.3d 848, 859 (10th Cir. 1999)).

> In the context of securities litigation the Supreme Court has stated that
>
> faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. Second, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. Third, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (internal citations omitted). *See also*, *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir. 2002) (applying usual Rule 12(b)(6) standard in PSLRA context).

6

### 1. *Standing of Limited Partners*

The defendants argue that, as limited partners of one or more Midas Limited Partnerships, the plaintiffs individually lack jurisdiction to bring a suit against the proponents of the particular investment. Defendants claim that the plaintiffs are not persons purchasing securities as required by the Securities Act of 1933 ("1933 Act") and Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934 ("1934 Act") as a result of their categorization as limited partners of one or more of the Midas Groups. (Rsp. at 4) They claim "[p]laintiffs have never personally entered into any contracts with, or purchased or leased anything from, any of the Defendants."

In general for a wrong committed against a corporation or the general partner of a limited partnership, a shareholder has no individual cause of action, though he loses the value of his investment. *Abrams v. Donati*, 489 N.E. 2d 751 (N.Y. 1985) ("[A]llegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually."). By contrast, however, a shareholder of a corporation or a limited partnership may sue individually "when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged." *Id.*

As alleged in the SAC, the alleged wrong was a fraud committed on the investors themselves, not on any of the particular Midas Groups which were set up by the purveyors of the investment and where defendant Michael Branch was installed as the general partner. (*See*, *Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC.*, 376 F. Supp. 2d 385, 408-409

(S.D. N.Y. 2005). Under some circumstances, a limited partner may, in fact, sue a general partner and others for securities fraud based on an issuance of limited partnership units "because the general partner could not be expected to sue himself for the benefit of the partnership. *Lawrence v. Cohn*, 932 F. Supp. 564, 573 (S.D. N.Y. 1996). When a claim is an individual one, limited partners are free to bring securities fraud claims.

In deciding whether a complaint states an individual or a derivative claim, the nature of the action is judged by the body of the complaint. *Sturm v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356, 1374 (N.D. Ga. 2000) To set out an individual action, the plaintiff must allege an injury which is separate and distinct from that suffered by the partnership as a whole and which exists independently of any right of the partnership. *Id.* The plaintiffs' claim is not for damage to the Midas Partnerships which were set up and controlled by the defendants. The claims are to benefit the limited partners individually who were misled, according to the allegations, about investing in the limited partnerships to begin with. ("[T]he limited partner can bring an individual, direct claim; a direct claim ... in the form of a class action suit; or a derivative suit on behalf of the partnership itself...." [citations omitted]). *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996). If the right which was violated flows from the breach of a duty owed by the defendants to the partnership, the harm to the investor flows through the partnership, and a suit brought by the shareholder to redress the harm is one "derivative" of the right retained by the partnership. *Id.* If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the

partnership, the suit is direct. *Id*. The case before this court is claimed, by the plaintiffs, to be a direct injury and the factual allegations support this characterization.

In adopting the PSLRA, Congress emphasized that "[p]rivate securities litigation is an indispensable tool with which defrauded investors can recover their losses" and that private lawsuits "promote public and global confidence in our capital markets and help to deter wrongdoing and to guarantee that corporate officers, auditors, directors, lawyers and others properly perform their jobs." *Joint Explanatory Statement of the Committee of Conference, Conference Report on Securities Litigation Reform,* H.R. Conf. Rep. No. 104-369, 31 (Nov. 28, 1995), 1995 U.S.C.A.A.N. at 730. When applying the PSLRA, Congress left unaffected shareholders' or limited partners right to sue for recompense when they are made the victims of self-dealing and deceit. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 235 F. Supp. 2d 549, 593 (S.D. Tex. 2002)

Therefore, the SAC is not futile on the basis of jurisdiction of the plaintiffs to sue the vendor of securities simply because of their designation as limited partners in one or more of the Midas Groups.

### *2. Whether Defendants are the Sellers of the Securities at Issue.*

The defendants also claim that the plaintiff has, in essence, sued the wrong party. They claim that JLC Technologies, LLC is not the same or an "also known as" of JLC OS3, which they claim to be a wholly separate entity. Whether Plaintiffs can, or will need to, 'pierce the corporate veil' is an issue for litigation and not grounds to ignore the provisions of Fed. R. Civ. P. 15(a).

9

As often repeated in the context of motions to dismiss, the question is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *Weatherhead v. Globe Intern., Inc*., 832 F.2d 1226, 1228 (10th Cir. 1987).

### 3. *Standing for Breach of Contract Claims*

Defendants claim the Midas Group limited partnerships are the owners of the Systems which were to be produced by the defendants, not the plaintiffs. (Rsp. ¶6) The Purchase Agreements, Rescission Agreement and Lease Agreements exist between the individual Midas Groups and OS3. The general partner for all the Midas Groups is, of course, defendant Branch. (SAC ¶12; Rsp. ¶6) They claim amendment is futile because none of the plaintiffs has a direct contract with any of the defendants. (Rsp. ¶6)

Colorado law is clear on this issue:

> A person not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the nonparty, provided that the benefit claimed is a direct and not merely incidental benefit of the contract. While the intent to benefit the nonparty need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both.

*Bloom v. National Collegiate Athletic Ass'n*, 93 P.3d 621, 623 (Colo. App. 2004); *East Meadows Co., LLC v. Greeley Irr. Co.,* 66 P.3d 214, 217 (Colo. App. 2003) (A person who is not a party to an agreement may enforce a contractual obligation if the promise to be enforced is expressly stated in the contract, or is apparent from the agreement and surrounding circumstances, and the benefit conferred is direct and not incidental.)

The court need not decide at this juncture if the claims of the plaintiff for breach of any of the contracts are necessarily valid. Before the court at this time is the question of whether an amendment to the complaint is futile. Sufficient facts have been alleged in the Complaint to indicate a triable issue regarding the direct benefit to the plaintiffs of the contracts at issue. (*See e.g.*, SAC ¶¶ 70-73, 84-86, 89-98, 103-112)

### 4. *Personal Jurisdiction Over Defendants John Graves, Cindy Johnson and Mark Johnson*

Defendants claim Plaintiffs have not shown sufficient proof of personal jurisdiction over Defendants John Graves, Cindy Johnson and Mark Johnson. (Rsp. ¶¶ 63-67) Plaintiff bears the burden of establishing personal jurisdiction over Defendants. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, however, Plaintiff's burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, there has been no evidentiary hearing, and the allegation is brought as an objection to a motion to file an amended complaint, Plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading," presumably in a motion to dismiss. *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction

must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992). Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this state." Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2007).

To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966). Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

Defendants argue that "[p]laintiffs proffer only a couple of allegations related to their state law claims, all of which are conclusory, unsubstantiated and easily proven false." (Rsp. ¶64). Whether the jurisdictional elements required to establish personal jurisdiction can be "proven false" is not the issue at this stage, since "proving" anything comes at a later juncture of the case. All three of the Defendants are alleged to be part of a civil conspiracy and many of the alleged overt acts of the conspiracy and conspirators are alleged to have taken place in Colorado. (SAC ¶¶ 234 - 246.) These allegations, together with the more specific allegations contained in

the preliminary portions of the SAC, are sufficient to state a *prima facie* showing that Defendants John Graves, Cindy Johnson and Mark Johnson engaged in, at least as co-conspirators, business within the state of Colorado and that the same defendants, at least as co-conspirators, have minimum contacts with the state of Colorado through the alleged activities of their co-conspirators and the solicitation of business for the venture in which they were involved.

### C. *Particularity of Pleading*

The defendants cite various reasons why the SAC does not meet the particularity requirements of the PSLRA and Fed. R. Civ. P. 9(b).

The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail "giving rise to a strong inference that the defendant acted with the required state of mind." *Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1254 (10th Cir. 2001); *see In re Silicon Graphics*, 183 F.3d 970, 979 (9th Cir. 1999) (reckless standard); *Eminence Capital*, 316 F.3d at 1052; 15 U.S.C. § 78u-4(b); *Tellabs,* 127 S. Ct. at 2504 (2007). The Tenth Circuit held, "[p]laintiffs can adequately plead scienter by setting forth facts raising a "strong inference" of intentional or reckless misconduct." *Id.* at 1259. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Press v. Chemical Investment Servs. Corp.*, 166 F.3d 529 (2d Cir. 1999); *In re: Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999); *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) (en banc); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999). Obviously, this standard overrides the general notice pleading requirement of Federal Rule of Civil Procedure 8(a)(2). *Tellabs, id.*

The PSLRA serves "twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs*, 127 S. Ct. at 2509; *ACA Financial Guaranty Corp.*, 512 F.3d at 56 -57. The heightened pleading standard furthers the goal of deterring frivolous litigation by erecting a significant hurdle for a plaintiff to clear before his complaint can survive a motion to dismiss. *Id.*

Factors to be evaluated in determining whether securities fraud claims made on information and belief satisfy the particularity requirements of the PSLRA are:

> (1) level of detail provided by facts stated in complaint; (2) number of facts provided; (3) coherence and plausibility of facts when considered together; (4) whether source of plaintiff's knowledge about a stated fact is disclosed; (5) reliability of sources from which facts were obtained; and (6) any other indicia of how strongly facts support conclusion that reasonable person would believe that defendant's statements were misleading.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003).

With respect to fraud allegations in general, a complaint "must contain allegations of the specific representations alleged to be fraudulent, where and when the statements were made, the particular defendant making the misrepresentations, and what was false about them." *Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1203 (D. Colo. 2002); *Armani v. Maxim Healthcare Servs., Inc.*, 53 F. Supp. 2d 1120 (D. Colo. 1999).

In this case, the Complaint alleges all these essential facts. The first twenty pages, one hundred fourteen paragraphs, of the Complaint contain background and other allegedly factual information to help place the plaintiffs' allegations and claims in context. In a separate section beginning on page 21, ¶¶115 - 177, the plaintiffs set forth specific information about the

14

allegedly fraudulent representations made by various defendants to entice investors to bankroll the Ford Johnson venture through the Midas Groups limited partnerships. Many of the paragraphs contain exact dates, events transpiring and the place where the event and representations were made.

Although most of the paragraphs do not allege exactly which, if any, of the plaintiffs were in attendance at these promotional meetings, this detail is not specifically required as part of the Complaint. Further, following the section of the Complaint outlining the specific alleged false representations, the Complaint sets forth the relationship of each of the plaintiffs with the various investment vehicles and how they came to rely upon the claimed misrepresentations to their detriment.

Given that the scheme was required to be set forth in the Complaint with a heightened level of detail, the court does not find the Complaint particularly prolix. The primary objectionable feature of the SAC, however, is that it is drafted as a classic "shotgun pleading," with each separate claim incorporating "every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). (*See* SAC, ¶¶ 215, *et seq.*) This style of pleading "invariably begin(s) with a long list of general allegations, <u>most of which are immaterial to most of the claims for relief</u>. The general allegations are incorporated by reference into each count of the complaint...." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (emphasis added).

In the SAC, by contrast, most of the general allegations and specific fraud allegations are material to the various causes of action. The causes of action are, in essence, the plaintiffs' theory of how the intertwined and previously detailed alleged facts and alleged misrepresentations fit the elements of the legal claim being asserted. There are very few of the facts listed in paragraphs 1 - 215 which are not at least marginally related to each of the causes of action.

The SAC does not truly fit the "puzzle" definition – a pleading improperly placing "the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts" – either, for the same reason. *See In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D. N.Y. 2005). Most, if not all, of the allegations section of the SAC correspond to the specific claims.

In the District of Colorado, U.S. District Judge Carrigan once admonished counsel that the court "looks with disfavor on "shotgun" pleadings." *Martinez v. El Paso County*, 673 F. Supp. 1030, 1032 (D. Colo. 1987) Plaintiffs' counsel in that case were directed to redraft their Complaint "including only those claims that can be factually supported on behalf of the particular parties for whom claims can be asserted." The *Martinez* infirmity does not, however, afflict the instant SAC since most, if not all, of the general and specific allegations do support the various claims for relief to one degree or another.

By repeating the general and specific allegations for each of the succeeding claims, there is some limited surplusage. However, "[a] complaint-so long as it is minimally sufficient to put a defendant on notice of the claims against him-will not fail for mere surplusage." *See United*

16

*States ex rel Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). The Seventh Circuit wisely stated, "Surplusage can and should be ignored. Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case." *Id.* Such is the status of this case.

Much of Defendants' remaining lengthy response to the motion to file the SAC contains evidentiary matters which are actually defenses against proof of the allegations, not reasons to bar the Complaint at the outset without a chance of resolution on the merits. (See, e.g., ¶¶ 13 - 15 alleging that the Rescission Agreement will "bar any securities claims against Defendant Ford Johnson or JLC OS3, LLC").

This court concludes that the plaintiffs' SAC meets the pleadings requirement of Fed. R. Civ. P. 9(b) and the PSLRA and is adequately presented to "facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. at 48. The clear intent of the request to file a SAC is to cure deficiencies made when the plaintiffs initially appeared *pro se* and again when counsel was too new to the case to have fully investigated the facts. There appears no intent to create undue delay and no dilatory motive on the part of the movant, nor any bad faith. There is some marginal prejudice to the opposing parties by allowance of the amendment that is common to defendants in every case where the original complaint has been subject to motions to dismiss. This level of inconvenience to defendants does not restrict the policy behind liberal allowance of timely amendments pursuant to Rule 15.

Therefore, to effectuate the broad purpose of Fed. R. Civ. P. 15 to liberally grant motions to amend in order to clarify the issues and let cases proceed to adjudication on their merits,

It is **ORDERED**:

Plaintiffs' Motion for Leave to File a Second Amended Complaint" [Doc. No. 87] is GRANTED. The Clerk shall file the Second Amended Complaint, currently marked for identification as Doc. No. 87-2.

It is **RECOMMENDED** that the following motions be **DENIED without prejudice**:

1. "Amended Motion to Dismiss and Brief in Support of Defendants Ford Johnson, Cindy Johnson, Mark Johnson, John Graves, and JLC Technologies, LLC" [Doc. No. 69, filed February 18, 2008];

2. "Motion to Dismiss and Memorandum Brief in Support Thereof of Defendant James Lake a.k.a. Les Lake" [Doc. No. 72, filed March 5, 2008]; and

3. Defendant Mike Branch's "Defendants Amended Motion and Brief to Dismiss Plaintiffs Amended Complaint" [Doc. No. 76]

**NOTICE: Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73**

**F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *Int'l Surplus Lines Ins, Co. v. Wyo. Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).**

Dated this 6th day of August, 2008.

                                            BY THE COURT:

                                            s/ Kathleen M. Tafoya
                                            KATHLEEN M. TAFOYA
                                            United States Magistrate Judge